UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHURCH OF THE PALMS-PRESBYTERIAN
(U.S.A.), INC., a Florida non-profit corporation,

                            Plaintiff,

v.                                                    CASE NO.: 8:04-CV-1513-T-MAP

THE CINCINNATI INSURANCE COMPANY,

                            Defendant.
_____/

**ORDER**

After discovering mold in various parts of a building, the Church of the Palms-Presbyterian (U.S.A.), Inc. (the "Church") filed a claim with its insurer, The Cincinnati Insurance Company ("Insurer"). When the Insurer concluded the damages were subject to an exclusion and denied coverage, the Church brought this action for breach of contract. Both sides have moved for summary judgment and the issues are whether certain exclusion clauses apply and whether the contract is ambiguous (docs. 31 and 32). After consideration, I find that the policy language is unambiguous and it does not cover the damages the Church suffered; accordingly, the Insurer's motion for summary judgment is granted.[1]

    *A. Standard of Review*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1] The parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See* doc. 38.

of law. Fed.R.Civ.P. 56(c). *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly support summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.*

   B.  *Background*

The parties stipulated to the material facts. *See* Stipulation of Facts for Cross Motions for Summary Judgment (doc. 32-2). The Church is covered by an all-risk policy (the "Policy") which excludes losses directly or indirectly caused by "rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes itself to damage or destroy itself" or for losses resulting from "faulty, inadequate or defective design, specifications, workmanship, repair, construction …" unless the loss results in a covered cause of loss. *See* Policy at ¶¶ 3(b)(2)(d)(2) and 3(b)(3)(c)(2). After discovering mold in various parts of one of its buildings, the Church hired an expert to study the problem. He determined the building's negligent construction and design most likely caused the mold infestation.[2]

---

[2] Importantly, both sides have accepted the expert's findings for Rule 56 purposes. *See* doc. 31, p. 3, ¶ 9. That expert identified several likely reasons for the mold: roof deficiencies and improper installation of flashing; HVAC system disrepair and poor design that caused excess humidity; mold contamination in the walls between the drywall and the insulation; mold/microbial contamination of the interstitial wall space and metal stud framing system; mold/microbial contamination in the mechanical rooms and within the air conditioning duct work; improperly installed vapor barrier on exterior walls allowing moisture into interior side of exterior walls and inside air conditioning allowed temperature within wall cavity to reach the dew point causing condensation and excessive moisture; intrusion of unconditioned, hot moist air into space above the second floor ceiling due to lack of a ceiling separating the "attic" space from the inside space; and improperly vented bathrooms and laundry facilities.

*C. Discussion*

Florida courts construe "all risk" policies like the one here to cover all fortuitous losses or damages other than those resulting from wilful misconduct or fraudulent acts or which are otherwise expressly and plainly excluded from coverage in the policy itself. *Fayad v. Clarendon National Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005). Once an insured shows a loss occurred to its property while the policy was in force, the burden shifts to the insurer to prove the loss arose from an excluded risk. *See West Best v. Underwriters at Lloyds, London*, 655 So. 2d 1213, 1214 (Fla. 4th DCA 1995); *Wallach v. Rosenberg*, 527 So. 2d 1386, 1388 (Fla. 3d DCA 1988); *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. 2d DCA 1984) citing *Jewelers Mutual Ins. Co. v. Balogh*, 272 F.2d 889 (5th Cir. 1959). And like any other insurance contract, the plain language of the policy controls. *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.,* 845 So.2d 161, 165 (2003). The contract is to be construed as a whole endeavoring to give every provision its full meaning and operative effect. *Id* at 166. Any inconsistency, uncertainty, or ambiguity in the policy's language must be genuine. If necessary, the court is to resort to ordinary rules of construction to resolve such issues in an effort to ascertain the intentions of the parties. *Id* at 165. If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and other limiting coverage, the insurance policy is considered ambiguous, and the ambiguous part is construed in favor of the insured and strictly against the insurer. *Id* at 165. This is particularly so when construing exclusions; any doubt or ambiguity favors the insured. *Green v. State*, 604 So. 2d 471, 473 (Fla. 1992).

Recognizing its burden, the Insurer points to the following policy provisions (the contested language is italicized):

3

3. Covered Causes of Loss

    a.    Risks of Direct Physical Loss

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the "loss" is:

        (1)    Excluded in 3.b., Exclusions; or

        (2)    Limited in 3.c., Limitations that follow

    b.    Exclusions
\*\*\*

        (2)    We will not pay for "loss" caused directly or indirectly from any of the following
\*\*\*

            (d)    Miscellaneous Causes of Loss

                1)    Wear and tear;

                2)    *Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;*

            (f)    Water Seepage

                Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.
\*\*\*

        (3)    We will not pay for "loss" caused directly or indirectly from any of the following: (3)(a) through (3)(c).  However, if an excluded cause of loss that is listed in (3)(a) through 3(c) results in a Covered Cause of Loss, we will pay for that portion of the "loss" caused by that Covered Cause of Loss.
\*\*\*

            (c)    *Negligent Work*
*Faulty, inadequate or defective*:
\*\*\*

                2)    *Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;*

                3)    Materials used in repair, construction, renovation,

>
> remodeling of part of any property on or off the "premises."

Although the policy omits the word "mold" in its exclusions, the Insurer maintains "mold" is a "fungus" and paragraph 3(b)(2)(d)(2) of the Policy expressly excludes losses due to fungus. Besides, the likely reasons for the mold as identified by the expert fit the exclusions in paragraph 3(b)(3)(c)(2) – faulty repair, workmanship, and design. Faced with the science, the Church concedes mold is fungus; yet, it argues its fungus differs from the fungus the policy excludes. The fungus the policy contemplates, reasons the Church, is the type of fungus caused by the natural decay of the building materials. Or, as the Church says: the policy's fungus is part of an "inherent vice" clause that "exclude[s] coverage for losses flowing from the latent and inherent tendency of most organic and inorganic matter to decay." *See* doc. 31-1 at p. 9. To reach the conclusion that its fungus differs from the exclusionary fungus, the Church applies a rule of contract construction, *noscitur a sociis*, a Latin phrase that means "it is known by its associates." BLACK'S LAW DICTIONARY 1084 (7th ed. 1999). In other words, "the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." *Id.* Thus, the Church seizes on the words surrounding "fungus" in this exclusion (corrosion, decay, deterioration, and self-destruction) to say the policy's use of the term is limited. Having logically stepped out this far, the Church bootstraps this premise to argue the policy's negligent construction exclusion (¶ 3(b)(3)(c)(2)) does not apply. Namely, because the Church's mold is not the type contemplated by the policy's exclusion, the policy covers it. And, therefore, because the Church's fungus is a covered cause of loss, the negligent construction exclusion does not apply. This is an exclusion-to-the-exclusion argument.

Looking at the insurance policy as a whole, the Church presents a strained, unnatural

interpretation to the mold exclusion, especially since it concedes negligent workmanship or design flaws likely caused the mold. Indeed, neither exclusion is ambiguous. *Swire,* 845 So.2d at 165 (simply because a provision is complex and requires analysis for application does not render it automatically ambiguous). While the policy does not specifically mention mold, it does exclude fungus. And the parties agree mold is a fungus. *See* doc. 32-2, p.8. Nor is there any need to resort to any rule of construction as the Church advances. The purpose of all-risk policies like this one is to cover, unless specifically excluded by the policy's terms, losses from "fortuitous events" that are dependent upon chance. *See* 10 COUCH ON INSURANCE 3D, § 148:50. The Church's policy, at least as it is relevant here, limited coverage on two separate fronts – mold infestation that occurred over a passage of time or losses (unless they result in a covered cause of loss) caused by faulty, inadequate, or defective design, workmanship, repair, or construction, or materials.

The former Fifth Circuit, applying Texas law, interpreted a similar inherent vice exclusion like the Church's in *Aetna Casualty and Surety Co. v. Yates*, 344 F.2d 939 (5th Cir. 1965). The *Yates* clause dealt with losses from rotting joists, sills and subflooring caused by an improperly designed air conditioning system. The insured argued that a covered loss, water produced by condensation from the faulty system, caused the damage. The former Fifth Circuit found the insured's unnatural interpretation of the exclusions would "very nearly destroy them." The exclusion to the exclusion contemplated rot damage caused by sudden water intrusion like that from extinguishing a fire or a burst pipe, not the condensation the insured experienced.

*D. Conclusion*

The principles the former Fifth Circuit applied in *Yates* are essentially the same Florida courts apply – insurance contracts are to be read as a whole with the goal of giving each provision its full meaning and operative effect. *Swire,* 845 So.2d at 166. Importantly, the parties do not dispute the expert's essential findings: the Church's mold problems developed gradually and were not associated with a single covered fortuitous event. Hence, this is not a case where disputed material facts exists as to the dominant causes of the mold.[3] To interpret the exclusion as the Church argues would very nearly destroy the exclusion. For all these reasons, it is

ORDERED:

1. Plaintiff's Motion for Partial Summary Judgment(doc. 31) is DENIED.

2. Defendant's Motion for Summary Judgment (doc. 32) is GRANTED.

3. The Clerk of Court is directed to close the file and enter judgment for the Defendant.

DONE AND ORDERED at Tampa, Florida on November 18, 2005.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

[3] One of the cases the Church principally relies on, *Travelers Indemnity Co. v. Jarrett*, 369 S.W. 2d 653 (Tx. App. Ct. 1963), is inapplicable because its ruling was predicated on a dominant cause which the policy covered. Although the homeowners' policy excluded coverage for "loss caused by inherent vice, wear and tear, deterioration; rust, rot, mould [sic] or other fungi, and contamination, " the court found lightning (a covered loss) was the dominant cause for the mold. A covered peril was not the cause of the Church's mold. Indeed, applying *Jarrett*'s reasoning to the facts in this case, its rationale supports the Insurer's position that the dominant causes of the resulting mold here – negligent construction and design of the building – were excluded causes of loss under paragraph 3(b)(3)(c)(2) of the Policy.